**BOUSE, Jr., Plaintiff-Appellant, v. BOARD OF REAL ESTATE EXAMINERS, Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23804. Decided June 13, 1956.

Walter I. Krewson, for plaintiff-appellant.

C. William O'Neill, Atty. Genl., Earl M. Merwin, Asst. Atty. Genl., for defendant-appellee.

378

## OPINION

By SKEEL, J:

This appeal comes to this Court on questions of law from a judgment of the Common Pleas Court affirming an order of the Ohio Board of Real Estate Examiners revoking the license theretofore granted by them to Hugo F. Bouse, Jr., as a real estate broker.

The facts can be briefly stated. The appellant and his wife were, on and before the time this action was instituted, the owners of approximately twelve acres of land in the township of Mantua, Portage County, Ohio. There is a large house and barn on the property. On December 12, 1952, the appellant and his wife entered into a written agreement to sell two acres of the twelve acre tract, being the part of said tract upon which the house was located at the northwest interesection of Center Road and Pioneer Trail, to Edith F. and William R. Lichota (husband and wife), for $16,000.00. Both Edith F. and William R. Lichota are lawyers but the contract was drawn by lawyers employed by them for that purpose. The purchasers paid $750.00 as a down payment to bind the bargain which amount the sellers admit they received. The contract specifically provides that no real estate broker is involved in the transaction. It also provides that possession shall be given on or before February 1st, 1953, but "if the owner continues to occupy the premises after that date, the owner will pay purchaser rent at rate of $200.00 per month." It was also provided that the transaction was to be placed in escrow with The Cleveland Trust Company or company of equal standing. It was also provided that all the papers or documents of conveyance and money should be deposited with The Cleveland Trust Company within ninety days from December 12, 1952, with the further provision that the transaction should be completed within the same period. The sale included "carpeting on two floors, drapes, drape hooks, venetian blinds on first floor, now in garage or on said property * * *." The seller's deed was deposited with the escrow agent of The Cleveland Trust Company on January 23, 1953, and on January 10, 1953, the buyers deposited the purchase price, partly in cash and partly by the commitment of the proceeds of a new mortgage to be filed for record when the property was conveyed. The purchasers then took possession of the property (before February 1st), moved in some furniture, and occupied the house as their residence. Some repairs were made by the purchasers, including the removal of some doors which were said to be "rotten" (and which have never been replaced) and the drapes were sent out to be cleaned at a cost of $20.00. These drapes were later sold to Mrs. Lichota's mother by the purchasers for $25.00 and, therefore, never returned to the property.

At the time the sales agreement was entered into, it was represented by Bouse that there were two mortgages against the property, one to The Cleveland Trust Company, with a balance due of about $14,000.00, and the other to an attorney named John Nelson of Painesville, Ohio. Nelson filed with the escrow agent a waiver of the lien of his mortgage as to the property subject to the sale.

After the deed was deposited with the escrow agent, Bouse left the city and did not return until March 18th or 19th, 1953. In his absence,

a title search was made which developed that there was a mortgage in favor of a Nellie Davis securing a debt of $3300.00 recorded against the property in addition to those above described. The escrow agent tried to reach Bouse about this development without success. However, he did reach a Miss Nellie Gottschalt living in Euclid, Ohio, who had negotiated the mortgage and was informed by her that the debt had been paid and the mortgage cancelled. The undisputed facts about this mortgage are that the debt was paid by check of Mrs. Bouse, dated July 17, 1952, made payable to Nellie Gottschalt, endorsed by her as received in payment of the Mantua-Bouse note and mortgage to be returned marked "Paid." The check bears clearing house stamps of July 25, 1952 and August 2, 1952, and the punch marks show it was paid August 5, 1952. The mortgage, introduced into evidence, shows the satisfaction form was signed by Nellie Davis and dated in the same handwriting as that of the signature on July 18, 1952. This cancellation was recorded March 21, 1953. The evidence as to the foregoing facts about the Nellie Davis mortgage is without dispute and the complainant's attempt to create doubt about these facts is without legal or factual substance.

As above indicated, the contract to sell the house and lot to Edith and William Lichota was dated December 12, 1952. Ninety days from that date would be March 12, 1953. The Lichotas went into possession of the property on about January 10th and were living there on March 13th, 1953 and continued to do so until early in April, 1953, and when they moved out, they padlocked the doors and have never surrendered the keys.

On March 13, 1953, William Lichota demanded and received from the escrow agent the return of his deposit, claiming a breach of the sales agreement in failing to present or have a clear title (because of the Nellie Davis mortgage) within the ninety day period. He was told by the escrow agent at the time he repossessed his deposit that the escrow agent had been told that the Nellie Davis mortgage had been paid and cancelled. When Hugo F. Bouse, Jr. returned to the city, either the 18th or 19th of March, William R. Lichota contacted him at once and demanded the return of the $750.00 deposit paid to Bouse when the contract was signed because of the alleged breach of the sales agreement as to title. Bouse told him that the Davis mortgage had been paid and he thought cancelled of record. As to the cancellation, he was mistaken. He procured the recording of its cancellation on March 21st or within two days. In the conversation with Lichota about the mortgage, Lichota demanded that Bouse sell him the whole twelve acre tract for $23,500.00 and threatened to have him arrested for unlawfully converting the deposit money unless some deal was made to his satisfaction. The complainant, Edith F. Lichota, on March 20th, 1953, signed the affidavit before the Clerk of the Cleveland Municipal Court, causing the arrest of Hugo F. Bouse, Jr. on a charge of converting to his own use funds ($750.00) belonging to Edith F. Lichota deposited with him in trust. He was put upon trial and found guilty but on appeal to this Court the judgment was reversed and final judgment entered for the defendant for the reason that there was no evidence of intent to defraud.

The appellant thereafter refused to return the $750.00 on the advice of counsel. Thereupon, on July 15, 1953, Mrs. Lichota filed a complaint against Hugo F. Bouse, Jr., a licensed real estate broker, with the Ohio Board of Real Estate Examiners, charging him with:

1. Knowingly making misrepresentations in this case that his title was good.

2. Failure within a reasonable time to remit monies in his possession belonging to another.

3. Having threatened legal proceedings to intimidate his prospective purchasers. (This charge is not supported by statutory authority. See §4735.18 R. C., Paragraphs A. E. & W.)

Upon trial the State Board of Real Estate Examiners found:

"After careful consideration of the testimony of the Lichotas v. Hugo Bouse, the Board is of the opinion that the license No. 20682 of Hugo F. Bouse, Jr., should be and is hereby revoked, finding him guilty as charged with violations of Subsections 1, 5, and 23 of §4735.18 R. C. (Sec. 6372-42 GC.)"

An appeal from this order was taken to the Common Pleas Court of Cuyahoga County where, upon trial on February 3, 1956, upon the record made before the Board and additional evidence, this order was affirmed.

The appellant claims the following errors:

"1. The Court erred in affirming an order of the State Board of Real Estate Examiners revoking the license of Hugo F. Bouse, Jr., Appellant, as a Real Estate Broker.

"2. The order of the State Board of Real Estate Examiners, Appellee, was against the manifest weight of the evidence and that the Court erred in affirming such order.

"3. The judgment of the Court of Common Pleas, affirming the order of the State Board of Real Estate Examiners, is not supported by sufficient evidence and is contrary to law.

"4. The Court erred in refusing to admit evidence offered by the appellant.

"5. Such judgment of the Court is contrary to law."

Sec. 4735.01 R. C., provides in part as follows:

"(A) 'Real estate broker' includes any person, partnership, association, or corporation, foreign or domestic, who for another and for a fee, commission, or other valuable consideration, or who with the intention or in the expectation or upon the promise of receiving or collecting a fee, commission, or other valuable consideration, sells, exchanges, purchases, rents, or leases, or negotiates the sale, exchange, purchase, rental, or leasing of or offers or attempts or agrees to negotiate the sale, exchange, purchase, rental, or leasing of, or lists or offers or attempts or agrees to list, or auctions, or offers or attempts or agrees to auction, any real estate, or the improvements thereon or who buys or offers to buy, sells or offers to sell or otherwise deals in options on real estate or the improvements thereon * * *

"Neither of the terms 'real estate broker' or 'real estate salesman' includes a person, firm or corporation or the regular salaried employees thereof who performs any of the following acts:

"1. With reference to real estate or any interest therein owned by such person. . ."

Sec. 4735.18 R. C. as effective in 1952 and 1953, provides in part:

"The state board of real estate examiners may, upon its own motion, and shall, upon the verified complaint in writing of any person, investigate the conduct of any licensee and may suspend or revoke or refuse to renew any license at any time where the licensee, in performing or attempting to perform any act as a real estate broker or real estate salesman or in any transaction involving the leasing or sale of an interest in real estate, is guilty of any one of the following:

"(A) Knowingly making any misrepresentation;

"* * *

"(E) Failure within a reasonable time to account for or to remit any money coming into his possession which belongs to others;

"* * *

"(W) Having published or circulated unjustified or unwarranted threats of legal proceedings which tended to or had the effect of harassing competitors or intimidating their customers;"

It was on the authority of paragraphs A. E, and W that the charges filed against the appellant were founded.

In 1955, the Legislature amended the first part of §4735.18 R. C., above quoted, to include after the words "* * * in performing or attempting to perform any act as a real estate broker or real estate salesman," the following: "or where such licensee in handling his own property, whether held by deed or option or otherwise * * *."

The amendment can have no effect on the rights of the parties to this appeal. It is argued by the Attorney General that the amendment was only for the purpose of clarifying the then meaning of the statute that a real estate broker is amenable to the provisions of the act in dealing with his own property. This contention is supported by the provisions of the first paragraph of §4735.18 R. C. just quoted. While it is true that a statute restricting and regulating the rights of citizens to engage in a business or profession is in derogation of common law and must be strictly construed, yet the interpretation of such a statute must give due consideration to the purposes to be accomplished and the manner in which such purposes are expressed. Here, the provisions of the statute grant the Ohio Board of Real Estate Examiners the power to suspend or revoke or refuse to reissue a license for any of the reasons named in the statute in performing or attempting to perform any act as a real estate broker, * * * or in any transaction involving the leasing or sale of an interest in real estate * * *. While the amendment makes the meaning of this clause clearer, it did not, in effect, add anything to the power of the Board in seeing to it that a real estate broker conducts himself in the sale of or otherwise dealing with his own property in compliance with the standards required by the licensing act. We must, therefore, overrule the contention of the appellant that the Board did not have jurisdiction of the appellant under the charges preferred by Mrs. Lichota which were drawn upon the authority of the provisions of §4735.18 R. C.

The assignments of error are first that the order of the Ohio Board of Real Estate Examiners was against the weight of the evidence; second that the judgment of the court, affirming the order of the Board, is against the manifest weight of the evidence, and third, both the order and judgment are contrary to law.

The first charge in the complaint filed with the Board is that the licensee violated the following provisions of the law:

"(1) Knowingly making any misrepresentation (in this case that his title was good)."

A careful reading of the record fails to show or disclose a scintilla of evidence to support this claim. No fair-minded person could come to any other conclusion on this issue but that the failure to cancel the Davis mortgage was the result of oversight or unintentional neglect. What possible purpose could there be in withholding the recording of the cancellation of a mortgage after the debt has been paid? Certainly there was a complete failure to show an untrue representation knowingly made. This charge of the complainant must be overruled.

The second charge in the complaint was to the effect that Hugo F. Bouse, Jr. failed within a reasonable time to remit monies in his possession belonging to another. The basis of this charge is that Bouse owed the legal duty to return the down payment of $750.00 to the purchasers because he had breached the sales agreement by not presenting a title clear of the Davis mortgage and that the purchaser, after the time had passed within which performance was to be completed, had a legal right to cancel the sales agreement. The question is, therefore, presented, - - do the facts justify the conclusion that the alleged breach would support an action to cancel the agreement? The record discloses a number of attempts to show that the parties considered the dates or time fixed for the performance of certain obligations of the sales agreement were "of the essence" of the agreement. Such evidence was inadmissible as seeking a conclusion of law from the witness. But the legal question as to whether the date the transaction was to be closed, which was fixed in the contract as ninety days after acceptance, "was of the essence" is in part determinative of the question of the right of the buyers to rescind the agreement and demand the return of the deposit money.

In considering this question, the following undisputed facts are important. The purchasers were both lawyers and their legal representative drew the agreement. The contract, as drawn by them, provided the same date for depositing the deed with the escrow agent and the closing of the transaction, that is, both were required to be done within ninety days from the date of acceptance. While the deed was deposited much earlier, it could have been deposited on March 12th, which would have made it highly improbable that the transaction could be concluded on that day, particularly if the deed had been filed in the closing minutes of the business day. The agreement provided that possession of the property should be surrendered to the buyers by February 1st; that failure to do so would make the seller liable to pay rent at $200.00 per month from that day. The fact is that the buyers took possession

about January 10th, 1953. While in possession, they made some physical changes in the property, including disposing of some cellar doors (which were never replaced) which "improvements" they said cost $1200.00. They also disposed of the "drapes" which had been sold to them as a part of the premises in the sales agreement. These facts show that on March 13th, 1953, when the purchasers demanded and received back the money deposited with the escrow agent, as to them the contract was no longer executory. They had received and were enjoying the benefit of the use of the property. They did not tender back the property they then possessed under the agreement. In fact, while in possession, their conduct with respect to the property was such that they could never return it in the condition in which they received it. Under these circumstances and at the point of time when rescission was demanded, it is clear that the time within which the seller was required to present a clear record title was not of the essence of the agreement. Performance had proceeded to such a point that either party, in seeking relief against the other under the agreement, either in rescission or for specific performance, would have to seek relief in equity. The case of Hayes Mfg. Corp. v. McCauley, 140 F. 2nd 187 (C. C. A. Ohio 1944), held that as a general rule, in equity time is not of the essence of a contract unless made so by its express terms or is so treated by the parties or is necessary from the nature of the contract. The phrase "Time is of the essence of a contract" means in equity that performance by one party at a time or within a period specified in the agreement is essential to enable him to require performance by the other party or is so material that failure to perform at the time prescribed will deprive the other party of some part of the benefits of the agreement. It is not to be denied that at law in dealing with a contract no part of which has been performed in an executory agreement, a party can not be compelled to receive late performance. But after part performance, it becomes a question of fact as to whether or not delay will deprive the other party of any part of the full benefit due him under the agreement.

Here the purchasers were enjoying the full benefit of the use of the property. They had deposited only one-half of the purchase price. They were not yet liable for interest on the principal of the mortgage, the proceeds of which would complete the total purchase price. A delay of a few days after notice to the seller of the uncancelled Davis mortgage to afford them the opportunity to clear the title would, under the circumstances, have been no detriment whatever to the purchasers continuing to enjoy the full benefit of their bargain. It is to be doubted whether the escrow agent had the legal right to return the deposit to the buyer without the seller's consent unless sufficient time had passed from the discovery of the uncancelled Davis mortgage to give him the right to act on his own behalf under the terms of the escrow agreement. Certainly he had no right to recognize the demands of only one party to the escrow agreement without the consent of the other.

Under the circumstances and the undisputed evidence, the buyers were not, on the 13th day of March, 1953, or at any subsequent date until the filing of these charges, entitled to the return of the down payment

384

of $750.00 as a matter of law. We hold that the conduct of Hugo F. Bouse, Jr. in refusing to return the down payment, as shown in the evidence, did not constitute a violation of **Paragraph E** of §4735.18 R. C., and that an order or judgment finding him guilty of such violation is not supported by any evidence.

The final charge of "having threatened legal proceedings to intimidate his prospective purchaser" is likewise not supported by any credible evidence or based on statutory authority. If there ever was a case in which purchasers attempted to force their will or demands beyond the terms of an agreement to buy land (with the help of law enforcement and administrative agencies), against the seller because of a supposed default of one of the provisions of the agreement, this is the case. The buyers had the seller arrested and charged with converting trust funds. This charge was filed two days after his return to the city. This was the first notice he had that a mortgage not mentioned in the sales agreement appeared on the record uncancelled. Before causing the arrest of the appellant, William Lichota had been told that the mortgage had been paid (which fact was demonstrated to be true). The demand for the return of the money accompanied with a refusal to give up possession of the property, claiming $1200.00 for socalled improvements and $20.00 for cleaning the drapes and padlocking the house when they did move out, the attempt to have a lien declared against the property for the $750.00 in a foreclosure proceeding in Trumbull County, without first reducing the claim to judgment, and finally, the filing of this complaint, show a course of conduct on the part of the purchasers wholly unjustified by the facts. Whatever was done by the appellant or his counsel seemed reasonably justified. The so-called threat was made by counsel for Bouse. It will be remembered that Bouse was discharged as not guilty after appeal in the criminal proceeding. The so-called "threat" was carried out and there is now pending an action for malicious arrest and prosecution. A real estate agent does not have to surrender his right to defend his reputation to retain his license as a real estate broker.

It must also be concluded that the act or threat complained of does not bring the conduct of Bouse or his counsel within the provisions of **Paragraph W** of §4735.18 R. C. as above quoted. The circumstances here did not involve a competitor or his customer. There is no justifiable grounds for holding Bouse violated **Paragraph W** of §4735.18 R. C.

Upon a careful consideration of the record and the evidence as it has application to the three charges preferred by Edith Lichota against Hugo F. Bouse, Jr., appellant herein, such appellant is as a matter of law entitled to a judgment discharging him therefrom.

Judgment reversed and final judgment entered for the appellant.
Exceptions noted. Order see journal.

KOVACHY, PJ, HURD, J, concur.